There are times when it's a very proud thing for the Federal Circuit to convene, and this is one of those days. I have the great honor of welcoming for the first time on the Federal Circuit bench, Circuit Judge Evan Wallach. We are proud to have him as a member of our court. We are equally proud to welcome back Judge Jeremy Fogle, who is one of the finest district judges in the country from the Northern District of California. He's so talented that they have put him in charge of educating the rest of the judges as the director of the Federal Judicial Center. With those few words, I think we're ready to start. Mr. Carpenter, welcome. I'm sorry, Your Honor. You may proceed. I thought you said something. Nothing necessary. May it please the Court, Your Honor. Kenneth Carpenter appearing on behalf of Mr. Norman Sturdivant. Mr. Sturdivant asserts that the Veterans Court failed to correctly apply and misapply this Court's rule in Roberson as expanded upon by this Court in Comer. In Comer in particular, this Court held that an issue involving a total rating based upon unemployability was not a freestanding claim. That concept was expanded by the Veterans Court in a case called Rice, which was decided in 2009. In the Rice case, the Court below determined that a claim for initial rating, which is the circumstance here, or a claim for increased rating had as part and parcel of that claim a claim for a total rating based upon unemployability. But in both Comer and Roberson, in addition to the implied TDIU claim, they did present ample evidence of unemployability, which is absent here. How do we deal with that, Mr. Carpenter? That is by operation of the VA's own regulation. That is the difference in this case from the case in either Comer or in Roberson. In this case, we have an increase in the scheduler ratings assigned to multiple locations of the chemical burns that were suffered by Mr. Sturdivant. Those separate ratings eventually triggered, in November of 2007, the scheduler requirements for 416A. That fact triggered the obligation of the Board in its 2008 decision to consider the question of extra scheduler rating based upon these disabilities alone. The Board in 2008 did not do that. I think you're just repeating what I said in two words, which is there's an implied TDIU claim. The question is, there's no evidence here of unemployability, which was present in both Comer and Roberson. How do we deal with that? I didn't make myself clear. That evidence is the increase in the scheduler ratings assigned to the individual disabilities for the chemical burns. Mr. Sturdivant meets the scheduler requirements. I understand he's got this TDIU claim, but he has not presented any evidence that he's unemployable. As a matter of fact, it cuts the other way. To the contrary, Your Honor, under the VA's own regulation, that is precisely what raises the issue of unemployability, that he meets the scheduler threshold. Under the plain language of the VA's regulation... Mr. Comer and Roberson made a big point of saying, in addition to meeting the schedule, he showed affirmative evidence of unemployability. Are you saying that's not a necessary additional requirement? That was the requirement under the holding in Roberson and Comer. In this case, we have a circumstance in which the veteran actually placed at issue the question of his entitlement to a total rating based upon unemployability in 2003. That issue was denied in 2004 on the specific grounds that he did not meet the scheduler requirement. When he met the scheduler requirement, the VA did not address it in either its decision or in the board's decision in 2008. Had they done so, what evidence would there have been in the record for them to look at? I think that's what Chief Judge Rader is getting at. So you get in the door, you're entitled to that determination, but what is the evidence in the record beyond the numbers themselves that supports unemployability? It's the consideration by the board, and the error of the board in this case was the failure of the board to consider that as part and parcel of his claim. Consider what? I know you understand the issue that you wanted them to consider, but what evidence was there to support your position on that issue? Let me try to make this clear. The consideration was for the extra scheduler rating. No consideration was made by the board under 416A. That was the error that was alleged below by Mr. Sturtevant. The board didn't have to address that issue because Mr. Sturtevant hadn't presented it. I understand what you're saying there, but let's say that they have, looking at the record. So let's say that there was a legal error on the part of the board that they didn't formally conduct that review. What differences make that there wasn't any evidence in the record that would have led to the result that you wanted? Well, first, there was evidence in the record that he met the scheduler requirements, which triggered consideration. If there was insufficient evidence, which I'll concede there was not, then the board's responsibility was to send it back to the VA for further development of that question, as they had done in 2006 when they sent it back for a specific examination. Let me just jump to another question. And pardon me, because I'm coming from a district court where I'm looking at things like carnal assailant. I'm trying to figure out how your client was harmed. Your client has gotten, actually, a review of his total disability claim based on everything, not only the specific impairments, but all of the other evidence he was able to present in the review that's now pending, the second review. I'll call it the 2011 review. The review that you're saying the board should have carried out and didn't carry out, where you admit the evidence in the record was insufficient, was based on a narrower standard of review. So how is your client harmed in not getting a narrower review than he's getting now in a broader review? The language of 416 expressly says and directs the VA's adjudicators not to consider non-service-connected disabilities when the condition arises to the scheduler requirements. He was entitled to the VA's duty to assist to an examination on the question of whether or not his skin condition alone, based on having met that scheduler threshold, did or did not result in his inability to work. So the 2011 review, the one that's working its way through the system now, includes the skin condition and additional evidence that would not have been permissible under the earlier review that you're talking about. So how was the error, if there was one, harmful to your client? First off, what is considered in what you're referring to as the 2011 is evidence that considered all of them together. Our complaint, Mr. Sturdivant's complaint, is he was entitled, once he met the scheduler requirements for this set of disabilities, for consideration of unemployability based upon those limitations alone. Isn't that a narrower standard? Again, I'm trying to understand how he is harmed, assuming that there was an error, how he was harmed by the error. Because in consideration of that, if he were to prevail, the effective date would go back to the year 2000, the date of his claim. That's what I was looking for. So it's a priority date, if I can borrow a term from Cathal. That would be correct. Because the consideration of what's pending before the 2011 process, as you've described it, is part and parcel of what the VA is considering a new claim based upon consideration of all of those conditions. But the government says that, as far as they're concerned, this appeal became right while TDIU was open and still an open question. They're claiming that we don't have jurisdiction because of that. And that's because they're trying to make this into a single claim for TDIU. This question of extra scheduler is based upon his skin condition alone. And the triggering provisions of the VA's own regulation that says once he gets the scheduler requirements for a single condition at 60 or more, which he did in 2007, then he was entitled to consideration for that condition alone based upon unemployability. What the VA is trying to say is that no, we're considering it as part of the bigger picture and we're giving more consideration because we're considering these other things. But that is playing it fast and loose with the VA's own regulations. The regulations provide, and in 2007 they didn't apply it, they didn't apply it again in 2008, and then the Veterans Court refused us the opportunity, or excuse me, denied us the right to require the board to have addressed it. Tell me again then how he's being harmed. One, because he is denied first the duty to assist for consideration of these chemical burns alone as the basis for his unemployability. Second, he is denied the benefit of the earliest possible effective date of 2000 because this is a continuously prosecuted claim based upon the initial rating to be assigned. He has now met the scheduler requirements under 416A, and once he did so, he was entitled to extra scheduler consideration and didn't get it for these disabilities alone. And that's how he's harmed. Now, supposing we pretend that this is still working its way through the system and the government may determine that given all the evidence that he reaches the level necessary for TDI, can you then go back and ask for an earlier date or no? Well, I can assure you I will. I'm not sure that it would be granted because they will consider that to have been a new claim based upon consideration of IU for all of the conditions as opposed to the claim which is the singular claim for both scheduler and extra scheduler which began in 2000. Thank you, Mr. Carpenter. Thank you. Ms. Kirshner. May it please the court. The veteran is asserting that the May 2008 board decision is erroneous because the board failed to decide the issue of TDIU or in the alternative that the decision is erroneous because the board failed to remand the issue of TDIU to the agency of original jurisdiction being the regional office. There are a couple of keys to understanding this case. First, section 4.16A has multiple requirements that must be satisfied to obtain a rating of TDIU. As the court has recognized, there is a requirement that the veteran demonstrate, quote, that he is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities. The other key to understanding this case is the proper procedure for making that determination. That issue has to be decided first at the level of the regional office before it can be addressed by the board and then before it can be addressed by the veterans court. The March 2006 board decision severed the issue of TDIU from the other various issues that the veteran was raising, including the issue of the scars. The March 2006 board decision sent back the issue of TDIU along with other issues for further factual development at the issue of the regional office. This would include additional medical examinations, which were not conducted until December 2009 and then in January 2010. Those medical examinations had not yet been completed at the time of the board decision, which is at issue here. Mr. Carpenter says that his client is going to lose an earlier priority date if we don't handle this separate claim for TDIU based on the ferns alone, as he is proposing. Well, that's not correct. The issue, first of all, the March 2006 board decision severed the issue of TDIU. What proceeded on up, resulting in the May 2008 board decision, is solely the issue of the quantitative rating for the scars. That is the issue that there was a separate remand order in May of 2007. That issue went back to the regional office. There were more medical examinations. Then there was another statement of the case, supplemental statement of the case, and finally the May 2008 board decision, which is at issue here. And that board decision is very, very narrow. It only addresses, as the veteran is pointing out to the court, it only addresses the quantitative rating. It doesn't address TDIU, because where is TDIU? At the time of the May 2008 board decision, TDIU is back at the regional office, pursuant to the March 2006 remand. Yes, Judge Fogle mentioned that, and the response was, but we will lose priority back to 2000. That's what I'm listening to hear you answer. The veteran is asserting that he'll lose the effective date. Well, no, he won't, because first of all, what I'm pointing out is that the decision of the board, that's at issue here, is very, very narrow. He can't lose the effective date for TDIU, because TDIU was not before the board in May of 2008, because it had been remanded. Counselor, can I just, I want to make sure I'm hearing you correctly, because this may solve a conundrum in my mind at least. So, the board didn't decide TDIU in the 2008 decision, correct? Yes. All right. Now, the veteran is asserting that that was erroneous, that they had to under Roberson and Comer, because it was an implied claim. Putting that aside for a moment, if we look at the 2008 decision as only deciding that he is not entitled to TDIU based on the scheduler ratings, he's not, I'm sorry if I'm confusing the administrative terms, but the 2008 decision doesn't deal with the question of whether he is unemployable. It just deals with whether the ratings were correct. Am I hearing you correctly? That's right. So, what I call the 2011 claim is still in the pipeline. That claim at the administrative level determined that he's not unemployable considering everything, but he has a right to appeal that and he's back appealing that. If he wins on that appeal, is he entitled to the same date of benefits as he would have been if we were to reverse the 2008 decision? If he wins on TDIU, then the question becomes, how did he win on TDIU? Okay. And there are multiple ways that this veteran could win on TDIU. Okay. And so if he wins on the narrower claim that counsel is arguing here, in the appeal of the 2011 ruling, he would go back to the date, his benefits would accrue from the date that he would have gotten under the legal theory that he's arguing here. Am I hearing? That's correct, Your Honor. And I believe the date is sometime during 2000. Okay. On the record. It's the date that corresponds with the claim for the scars. And if he wins only on the broader composite theory, all of the conditions and the other independent evidence, then it would be a later accrual date. It might end up being the same date, Your Honor, because some of the conditions are actually much earlier. Okay. And all of that is embedded in the 2011 appeal. That's correct. He can get full relief if he prevails on the 2011 appeal. He can get all he's entitled to in the 2011 appeal. All the way back to the date he won, which is 2000 approximately. Yes. Yes. And what I also wanted to point out is that this 2000, what you're calling the 2011 appeal, which actually goes much further back, is en route to the Board of Veterans' Appeals. And this is pursuant to the Regulation 38 CFR 19.38, which states, quote, Remanded cases will not be closed for failure to respond to the supplemental statement of the case. And further, quote, The case will be returned to the Board for further appellate processing. So even if the veteran does nothing in response to the supplemental statement of the case, the matter automatically goes to the Board for what would become the Board's decision, which is the final decision of the Secretary. Further, I think the other case that's key to understanding this case and the complicated procedural posture of the case is this court's opinion in Disabled American Veterans, which is cited in our brief at pages 19 to 20. There, this court pointed out that before the Board of Veterans' Appeals can address an issue, it has to be addressed at the level of the agency or regional jurisdiction, which in this case would be the VA regional office. Here, at the time of the May 2008 Board decision, the regional office had not yet addressed the issue of TDIU. In fact, that issue had not yet been fully developed with the factual records. The examinations, the medical examinations had not yet been conducted. They now have been conducted, and the veteran has been given a supplemental statement of the case, and we expect that the matter will progress to the Board of Veterans' Appeals, excuse me, to the Board, where the issue of TDIU and the effective date, if TDIU is granted, will be decided. Accordingly, it's our view that in this case, it really is not a case that involves the court's jurisdiction. Here, it's simply a case where the veterans' court correctly stated the holding in Comer and applied it to the somewhat complicated factual situation here presented, where the issue of TDIU was clearly raised and is now, was at the regional office at the time of the Board's decision. So if the court has no further questions. Thank you. Mr. Kirchner, Mr. Carpenter, you have over four minutes. To begin with, Your Honor, the statement of the Department of Justice attorney that the effective date will be granted is of absolutely no value to Mr. Sturgeon. This individual will not be assigning that effective date. So, quite frankly, I don't think that that is a valid representation about his ability to get the relief assigned. But more important... But it is before, it is a possibility based on that proceeding, right? I do not believe so, Your Honor, based upon my experience with the VA... If I understood Ms. Kirchner, she said if the TDIU is granted on the same narrow basis you're requesting it here, the effective date will accompany that finding. I'm concerned that in effect what you're saying is that a representation by the government to this court is not valid. It's simply not binding, Your Honor. It's a gratuitous statement that supports the position of the government in which the individual making the representation is not in a position to make the statement or make the adjudication. She is not the adjudicator. When this matter goes before the board on the current pending appeal for what has been described as the 2011 process, that will be a determination by a member of the Board of Veterans' Appeals, by a veterans' law judge. He may or may not decide it. He may grant the benefit but then send it back to the VA for a determination of the effective date. I'm simply trying to say to you that the characterization that he can receive that relief is illusory at best. But the more important issue that has been overlooked by the government is their avoidance of their duty to assist at this direct issue. That is of these disabilities alone. Where is the VA examination that addresses these disabilities alone? If we follow your line of logic, aren't we simply taking Roberson and Comer and taking them to a point where you started out with someone who was pro se and who needed assistance and we're taking it to a point where the regional office always has to consider TDIU no matter what. With respect, your honor, no, that's not the circumstance here. The government described it correctly. What they are relying upon is this illusion that they are capable of severing the issue of TDIU. Under this court's holding in Comer, you cannot sever that issue. That isn't a freestanding issue that may be severed. It is part and parcel of the claim for the initial rating for the chemical burns. And that severance is precisely the violation of Comer. Because now the board is off the hook after they remanded it in 2006 for consideration of IU without the scheduler requirements. In 2007, he's granted the scheduler requirements. That puts a whole new issue on the table that should have been considered by the board when it got back to the board in 2008. When it got back to the board in 2008, it got institutional amnesia about the remand that it had sent in 2006. That remand addressed IU globally, not specifically. 416 deals with it specifically when you meet those scheduler requirements for a single set of disabilities alone. And that's where the error was made here by the board. And the error made by the Veterans Court was in precluding consideration or permitting the board not to have to consider it. The board had to consider it because it considered it in 2006. They can't wait for it to trickle back up to the board without the type of duty to assist that was required in 2008. I see that I'm out of my time. Unless there's any further questions. Thank you.